| ANTHONY JEFFREY CHRISTENSEN, | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
|---|---|
| Plaintiff, | |
| v. | Case No. 2:18-cv-143 |
| BRUCE BURNHAM et al., | District Judge Dee Benson |
| Defendants. | |

Plaintiff, Anthony Jeffrey Christensen, a pre-trial detainee at Sanpete County Jail (SCJ), seeks remedy for alleged civil-rights violations by county employees regarding his conditions of confinement. *See* 42 U.S.C.S. § 1983 (2019). Specifically asserting inadequate medical treatment, the Complaint names as defendants: Dr. Bruce Burnham, Nurse Lisa Estey, Sgt. Gretchen Nunnley, Sgt. Ross Bailey, Dept. Brandon Brown, Lt. Brad Bown, Captain Robert Braithwaite, Dep. Trevor Larsen, and Sgt. Jeff Nielsen. (Doc. No. 5.)

Defendants now move for summary judgment.[1] The Court grants the motions, but first screens out several defendants.

## I. SUA SPONTE DISMISSAL

### A. GROUNDS FOR DISMISSAL

Evaluating claims for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to

---

[1] Plaintiff also filed a document, titled, "Counter Motion for Summary Judgment," (Doc. No. 65.) However, he later explained that he meant it as a response to Defendant Burnham's summary-judgment motion, stating, "I never meant to file any motion for summary judgment." (Doc. No. 70, at 1.) The Court treats it as such.

the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

This Court must construe pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for

the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing

*Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

## B. AFFIRMATIVE LINK

The complaint must clearly state what each individual defendant did to violate Plaintiff's

civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating each

defendant's personal participation is essential allegation). "To state a claim, a complaint must

'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, No. 08-2222,

slip op. at 4 (10th Cir. July 20, 2009) (unpublished) (emphasis in original) (quoting *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Plaintiff may not name an individual as a

defendant based solely on his or her supervisory position. *See Mitchell v. Maynard*, 80 F.2d

1433, 1441 (10th Cir. 1996) (stating supervisory status alone does not support § 1983 liability).

And, "denial of a grievance, by itself without any connection to the violation of constitutional

rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v.*

*Shelton*, No. 09-3113, 2009 U.S. App. LEXIS 25787, at *11 (10th Cir. Nov. 24, 2009).

Moreover, the Third Circuit has persuasively advised regarding inadequate-medical-

treatment claims that nonmedical correctional staff may not be "considered deliberately

indifferent simply because they failed to respond directly to the medical complaints of a prisoner

who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d

Cir. 1993). Expanding on this, the court stated:

> If a prisoner is under the care of medical experts . . . , a
> non-medical prison official will generally be justified in
> believing that the prisoner is in capable hands. This follows
> naturally from the division of labor within a prison. Inmate
> health and safety is promoted by dividing responsibility for
> various aspects of inmate life among guards,

> administrators, physicians, and so on. Holding a non-
> medical prison official liable in a case where a prisoner was
> under a physician's care would strain this division of labor.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

### C. CLAIM NOT LINKED TO NAMED DEFENDANTS

Plaintiff has not affirmatively linked his claim to these defendants: Bailey, Brown, Bown, Braithwaite, Larsen, Nielsen, and Nunnley. None of these defendants was in a position to provide medical care. Each of them solely provided supervision or referred Plaintiff to medical personnel or denied grievances. None of these activities support a civil-rights claim; thus, all these defendants are dismissed.

### II. SUMMARY JUDGMENT

This Court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding

the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d1205, 1209 (10th Cir. 2000).

Defendants' assertion of qualified immunity modifies the summary-judgment review. Asserting qualified immunity, a state employee creates a rebuttable presumption that she is immune from the plaintiff's § 1983 claims. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). And rather than "focus[ing] on the existence of genuine disputes of material fact," the court must "'determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* questions before the court.'" *Spencer v. Abbott*, No. 16-4009, 2017 U.S. App. LEXIS 24668, at *10 n.6 (10th Cir. Dec. 5, 2017) (unpublished) (emphasis in original) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015)).

The qualified immunity analysis has two parts: first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and second, "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the plaintiff fails to satisfy either element of his burden, the court must grant the defendant qualified immunity. *See Medina*, 252 F.3d at 1128.

If the material facts are not disputed, the question of immunity "is a legal one for the court to decide." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). Such is the case here.

The claim here is based on Plaintiff's complaints of hemorrhoids. (Compl., Doc. No. 5, at 4.) He sought help from remaining Defendants Burnham and Estey from January 12, 2018, when he "filled out a medical request," (*id*.), until he filed the Complaint on February 28, 2018, (*id*.).[2] He asserts that after a seventeen-day delay he received ongoing treatment but not the surgery that he preferred.

## A. LEGAL STANDARDS

Because Plaintiff is a pretrial detainee, his inadequate-medical-treatment claim derives directly from the Fourteenth Amendment's due process clause, not the Eighth Amendment's prohibition on cruel and unusual punishment. *Randall v. Bd. of County Comm'rs*, 184 F. App'x 723, 726 (10th Cir. June 13, 2006) (unpublished). As this court has previously recognized, however, the analysis is the same:

> Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. Thus, [a pretrial detainee's] inadequate medical attention claim must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

---

[2] From the time Plaintiff filed his complaint to now, Plaintiff has tried to add further content to his inadequate-medical-care claim by introducing facts that occurred after the Complaint was filed. (Doc. No. 5, filed Feb. 28, 2018.) However, Plaintiff initiated service of the Complaint himself and has pushed the litigation to quick resolution. Indeed, Defendants' Summary Judgment Motion, (Doc. No. 55), was filed a mere three months from the Complaint's filing day. Plaintiff never moved to amend his complaint. But buried in his "Opposing Affidavit to Summary Judgment," (Doc. No. 40), Plaintiff stated, "The plaintiff would ask the court to amend his complaint or allow discovery before dismissing the plaintiff's complaint. Or even allowing summary judgment in favor defendants based simply on the vagueness where they claim the plaintiff does not allege any specific wrongdoing by the supervisors." (*Id.* at 5.) However, Plaintiff never filed a motion to amend, analyzed his request under Rule of Civil Procedure 15, or followed up on his statement. This case has since been fully litigated and is decided upon the content of the Complaint as originally filed. (Doc. No. 5.)

*Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citation omitted).

This standard is hard to meet, as "'[d]eliberate indifference[]' . . . requir[es] a higher degree of fault than negligence, or even gross negligence." *Barrie v. Grand County*, 119 F.3d 862, 869 (10th Cir. 1997) (quotation omitted); *see also Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Tenth Circuit has specified the standard as follows: "[A]n official . . . acts with deliberate indifference if its conduct . . . disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Barrie*, 119 F.3d at 869 (quotation omitted). To meet this standard, Plaintiff must "present evidence of the prison official's culpable state of mind," which requires showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Mata v. Saiz*, 427 F.3d 745, 751 (10ᵗʰ Cir. 2005) (quotation omitted).

To prevail, Plaintiff must "show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). And, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of a[ constitutional] violation.").

Delay in receiving treatment is cognizable only if the delay was caused by deliberate indifference and resulted in substantial harm. *Olson v. Stotts,* 9 F.3d 1475, 1477 (1993). "[I]n the context of a missed diagnosis or delayed referral, there must be direct or circumstantial evidence

that 'the need for additional treatment or referral to a medical specialist is obvious,'" and "'where a doctor merely exercises his considered medical judgment,'" no deliberate indifference exists. *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Self v. Crum*, 439 F.3d 1227, 1231-32 (10th Cir. 2006)).

## B. UNDISPUTED MATERIAL FACTS[3]

• Before Plaintiff's incarceration in Utah, he was imprisoned in Wyoming. (Doc. No. 74-1.) On August 24, 2016, a Wyoming corrections doctor observed that Plaintiff reported persistent internal hemorrhoids. (*Id*. at 11.) The doctor noted that Plaintiff (a) had used steroid cream and thought it might have helped slightly; (b) recalled "a positive surgical excisional outcome a few years ago and would like to pursue surgery again"; (c) "reviewed other options (such as banding) but the patient is not interested in banding at this time." (*Id*. at 11.) In another note, the doctor stated that Plaintiff was "only interested in complete excision (the same procedure that he underwent before)." (*Id*.) Another time, the doctor listed his medical interventions as follows: "Will begin with Anusol cream as need along with regular miralax to combat constipation that led to the hemorrhoids. If neither of these are helpful we may consider other interventions – the patient has indicated a preference for surgery." (*Id*.at 13.)

• During January and February 2018, Plaintiff was housed at SCJ, where Defendant Burnham was a medical doctor and Defendant Estey was a nurse. (Compl., Doc. No. 5, at 2, 6.)

• "As a physician at the [SCJ], [Defendant Burnham was] responsible for primary care treatment for inmates at the Jail." (Doc. No. 54, at 4.)

---

[3] The only facts set forth here regard those claims to which Plaintiff has affirmatively linked defendant(s). Any other allegations irrelevant to named defendants are not considered.

• As a nurse at the jail, Defendant Estey was "responsible for assisting in the medical care of inmates, including picking up inmate's prescriptions from the pharmacy and administering prescriptions," "review[ing] Medical Request Forms from inmates and schedul[ing] appointments with the doctor." (Doc. No. 35, at 1.) She did "not perform medical exams on inmates." (*Id*. at 1-2.)

• On January 12, 2018, Plaintiff filed a Medical Request Form at SCJ. (Doc. No. 5-2.) The form stated, "Sat morning I used the rest room and there was a lot of blood not just when I wiped. It was dripping. Then a short time later it stopped." (*Id*.) Defendant Estey scheduled an appointment for Plaintiff with Defendant Burnham. (Doc. No. 35, at 5.)

• On January 24, 2018, Plaintiff filed another Medical Request Form and a General Inmate Request Form, both requesting to see a medical doctor. (*Id*.) The Medical Request Form stated, "'Still Bleeding' when I use the rest room. . . . Please schedule appointment." (Doc. No. 45, at 17.) Defendant Estey responded "that Dr. Burnham was out of town and that [Plaintiff] would be seen by Dr. Burnham on Monday, January 29, 2018." (Doc. No. 35, at 5.)

• On January 29, 2018, Defendant Burnham examined Plaintiff and "prescribed fiber tabs." (*Id*.) Defendant Burnham advised Plaintiff to buy hemorrhoid cream from the commissary. (Doc. No. 40, at 14.)

• On February 2, 2018, Plaintiff again requested a medical appointment. (*Id*.)

• "On February 5, 2018, Dr. Burnham treated [Plaintiff]. Dr. Burnham prescribed Proctofoam HC." (*Id*.) Plaintiff was told to "administer the Proctofoam himself." (*Id*.) The Proctofoam and fiber tabs were prescribed "for use of three months." (Doc. No. 27-1, at 7.) Plaintiff specifically requested surgery, but Defendant Burnham denied him. (Doc. No. 5, at 7.)

• On February 22, 2018, Plaintiff filed a medical request form. (Doc. No. 16, at 1.) He stated, "The medication you prescribed is only good for 14 uses. You said to use it once a day for a month. There is no way it last a month. [sic] Please check into this." (Doc. No. 16, at 3.)

• On February 26, 2018, Defendant Estey stated that Defendant Burnham said he did not want to see Plaintiff and would not adjust Plaintiff's medication. (Doc. No. 16, at 1.) Defendant Estey said she would refill Plaintiff's medication on March 6, 2018, leaving Plaintiff without medication after February 22, 2018 until March 6, 2018. (*Id.*)

• By February 27, 2018, the severe bleeding had stopped. (Doc. No. 16.)

• In Defendant Burnham's medical opinion, Plaintiff's "condition did not require a visit with a medical specialist." (Doc. No. 54, at 5-6.)

### C. APPLYING LAW TO FACTS

Based on the undisputed facts--supported by declarations and medical and grievance records that the Court has thoroughly reviewed--this Court concludes Defendants were not deliberately indifferent to Plaintiff's hemorrhoids from January 12 through February 28, 2018. To the contrary, Defendants timely responded to Plaintiff's requests, scheduling appointments, and providing two examinations and two prescriptions.

### 1. DIFFERENCE OF OPINION AS TO WARRANTED TREATMENT

Far from "deliberate indifference"--"the unnecessary and wanton infliction of pain"-- the record over these visits shows Defendants ensuring treatment for the hemorrhoids when requested. *Estelle*, 429 U.S. at 104 (quotation marks & citation omitted). It may not have been at the moment Plaintiff wanted it or the exact medication or dosage or other treatment that Plaintiff wanted, but the medical care was uniformly adequate in that Plaintiff's expressed need for help

with pain and discomfort was consistently treated by Defendants. Plaintiff disputes this, but his allegations are unsupported.

Plaintiff's point really is that he, as an unqualified layperson, wanted more or different treatment (surgery) from the medical-professional defendants--not, as it must be shown to prevail, that Defendants, with full knowledge of the deleterious effects of their actions or inactions, outright ignored or even exacerbated Plaintiff's serious medical needs (assumed but not decided here). *Id*. at 107 (stating that, when inmate contended "that more should have been done by way of diagnosis and treatment" and "suggest[ed] a number of options that were not pursued, that was "a classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment").

> [T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law.

*Self*, 439 F.3d at 1232-33; *Olson,* 9 F.3d at 1477; *LeDoux v. Davies*, 961 F.2d 1536, 1531 (10th Cir. 1992); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Further, an "informed judgment" as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).

Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendant Burnham was unreasonable in relying on his own judgment. Defendant Burnham merits qualified-immunity protection.

## 2. DELAY IN TREATMENT

As to the delay in treatment between the time Plaintiff filed his first medical request (January 12, 2018) and the time Defendant Burnham saw him (January 29, 2019), this delay falls upon Defendant Estey, not Defendant Burnham. There is no dispute that Defendant Burnham was out of town at the time of Plaintiff's request, so Burnham was not in a position to meet Plaintiff's request. Estey is the one who took Plaintiff's request and decided to set Plaintiff for an appointment with the out-of-town Defendant Burnham instead of trigger more emergent care.

"A prison medical professional who serves solely as a gatekeeper for other medical professional capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Delayed care constitutes a constitutional violation only when the inmate shows the delay ended in "substantial harm, which means "lifelong handicap, permanent loss, or considerable pain." *Id* at 751.

Upon receiving Plaintiff's January 12, 2018 request for a medical appointment, Defendant Estey immediately scheduled Plaintiff to see Defendant Burnham on January 29, 2018. Based on the evidence, the only symptom she personally[4] had been notified of was that one morning Plaintiff had "used the rest room and there was a lot of blood . . . then a short time later it stopped." (Doc. No. 5-2.) There is no allegation that Plaintiff brought anything more to Defendant Estey's attention until January 24, when he informed her "'Still Bleeding' when I use the rest room. . . . Please schedule appointment." (Doc. No. 45, at 17.) His words did not suggest an emergency, considerable pain, or fear of permanent loss or handicap.

---

[4] Though Plaintiff suggests that he told other SCJ personnel that he was in pain, there's no evidence that he told Defendant Estey.

So Defendant Estey adequately fulfilled her gatekeeper role: When told that Plaintiff had bled upon using the toilet, she scheduled an appointment as requested. She communicated that Defendant Burnham was gone at the time and could see Plaintiff on January 29. "The available evidence fails to support a reasonable inference that Defendant [Estey] knew that a doctor's care was more urgently needed and that she recklessly disregarded such a need." *Winrow v. Stell*, No. CIV-13-1144-D, 2015 U.S. Dist. LEXIS, at *89-92 (W.D. Okla. March 5, 2015) (report & recommendation), adopted by 2015 U.S. Dist. LEXIS 74945 (June 10, 2015). As such, Defendant Estey's actions "cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105. Plaintiff has not shown that Defendant Estey "intentionally withheld medical treatment in order to inflict pain or harm upon him." *Narduzzi v. Smith*, No. 1:14cv-1349, 2015 U.S. Dist. LEXIS 128390, at *14 (M.D. Pa. Sept. 24, 2015); *see Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999).

### D. CONCLUSION

As a matter of law, Defendants' treatment of Plaintiff, as it is set forth in undisputed evidentiary submissions, simply cannot be said to "offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*. at 106. Thus, under the qualified immunity analysis, Plaintiff has not shown that the government officials violated a constitutional right. They therefore are entitled to qualified immunity. And, the inadequate-medical-care claims against Defendants Burnham and Estey are dismissed.

## III. ORDER

**IT IS ORDERED** that:

(1) Plaintiff's claims against Defendants Bailey, Bown, Brown, Braithwaite, Larsen, Nielsen, and Nunnley are **DISMISSED** with prejudice because he failed to state a claim upon which relief may be granted.

(2) Defendants' summary-judgment motions are **GRANTED** as to Plaintiff's inadequate-medical-treatment claims against Defendants Burnham and Estey. (Doc. Nos. 36 & 55.)

(3) Plaintiff's designated summary-judgment motion, (Doc. No. 65), is actually a response to Defendant Burnham's summary-judgment motion, (Doc. No. 55), and shall be redesignated as such on the docket.

(4) All other motions on the docket are now moot and shall be terminated. (Doc. Nos. 15, 29, 57, 63, 68, 73, 74, 75, & 81.)

(5) This action is **CLOSED**.

DATED this 18th day of March, 2019.

_____
JUDGE DEE BENSON
United States District Court